IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

ADM INVESTOR SERVICES, INC.,     )
                                 )
                 Plaintiff,      )
                                 )
     v.                          )    No.  06 C 6539
                                 )
THOMAS RAMSAY,                   )
                                 )
                 Defendant.      )

                MEMORANDUM OPINION AND ORDER

     ADM Investor Services, Inc. ("ADM") has moved to dismiss the
Corrected Amended Counterclaim (for purposes of simplicity,
simply "Counterclaim") brought against it by Thomas Ramsay
("Ramsay") in this action, which was originally initiated by ADM
to recover a deficit balance in Ramsay's commodity futures
account when ADM closed out that account.  For the reasons stated
in this memorandum opinion and order, ADM's motion is granted and
the Counterclaim is dismissed.

     Ramsay's basic premise is that ADM somehow violated its
obligations to him by closing out his account because of its
deficit posture without first giving him notice and an
opportunity to cure.  But that contention flies directly in the
face of Paragraph 5 of the Customer Agreement ("Agreement")
between them, the Agreement having previously been found by a
Texas jury and a consequent judgment to be binding on Ramsay.
Here is Agreement ¶5 (emphasis added):

     If, at any time, Customer's account does not contain
     the amount of margin required by ADMIS, or by any

> exchange, clearing house or other regulatory authority, <u>ADMIS may, at its sole and absolute discretion, at any time or from time to time, without notice to Customer, close out Customer's open positions in whole or in part</u> or take any other action is deems necessary to satisfy such requirements, including, but not necessarily limited to, transferring funds from other accounts of customer including transfers between CFTC Segregated and other accounts. Failure of ADMIS to so act in such circumstances, in whole or in part, shall not constitute a waiver of its rights so to do any time or from time to time thereafter, nor shall ADMIS be subject to any liability to Customer for its failure so to act. In addition, ADMIS has the right, but not the obligation, to liquidate the account(s) upon receipt of notice of the death of customer (if applicable).

Even though a Fed. R. Civ. P. ("Rule") 12(b)(6) motion generally credits the allegations of the targeted pleader, that is of course not the case where the allegation is so directly at odds with a binding document that is part of, or is directly referred to in, the attacked pleading--and that is surely the case as to Ramsay's patently groundless allegation in Counterclaim ¶17, specifically referring to Agreement ¶5, that:

> Implicit in this provision is that the customer must be advised of, and given a reasonable opportunity to satisfy, such requirements before ADMIS can elect to close out his open positions.

Although the full extent of the potential sea change wrought by last Term's decision of the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965, 1973 n.14 (2007) is still being worked out in the federal courts around the country, there is no question that it announced the principle that the allegations being examined must satisfy the test of "plausibility," and

2

Ramsay's "implicit" assertion plainly flunks that test.

Ramsay seeks to trump the clear thrust of that no-notice provision by pointing to Chicago Mercantile Exchange ("Exchange") Rule 930 as mandating the notice that he claims as an entitlement. But as ADM has urged in the Reply Brief that it has just tendered for presentment at tomorrow's previously-scheduled status hearing, that argument is directly refuted by the "on all fours" decision in First Am. Discount Corp. v. Jacobs, 324 Ill.App.3d 997, 1009, 756 N.E.2d 273, 300 (1st Dist. 2001):[1]

> Under this analysis, with which we agree, Rule 827 is not intended to extend the rights of the customer, but rather to protect the right of the brokerage house to be free from liability if it issues a margin call instead of instantly liquidating the customer's positions. Thus, as articulated in Moss, the broker may issue a margin call, but Rule 827 does not prohibit him from going a step further and liquidating the customer's under-margined account without notice.

Nothing daunted by the failure of his alchemist-like effort to transmute base metal into gold, Ramsay also contends that the target of the Amended Third-Party Complaint that he has introduced into the case--Texas Trading Co., Inc. ("Texas Trading"), Ramsay's introducing broker that he used to place commodity futures orders with ADM--somehow amended the no-notice provision of Agreement ¶5 by reversing it entirely to require

---

[1] Exchange Rule 827, referred to in the ensuing quotation in the text, is the predecessor to Rule 930, with "no significant difference between Rule 827 and the relevant provisions of Rule 930" (id. n.2).

3

notice and an opportunity to cure.  To that end Ramsay seeks to label Texas Trading as ADM's agent, not his own agent, throughout the Counterclaim.  But even though none of the parties has seen fit to provide this Court with the information--contractual, regulatory or statutory--that might be needed to define the concept of an "introducing broker,"[2] even under such introducing broker arrangements as would be most favorable to Ramsay (which the Counterclaim neither identifies nor suggests), our Court of Appeals has said this in another lawsuit involving ADM, Lachmund v. ADM Investor Servs., Inc., 191 F.3d 777, 783 (7th Cir. 1999):

> Here, Mr. Lachmund submits that his complaint adequately pleads agency because it alleges the specific fact that A/C is a guaranteed IB [introducing broker] of ADMIS.  However, we agree with the CFTC that this status, by itself, is not sufficient to give an IB the status of an agent.  See Violette v. First Options of Chicago, Inc., No. 95-R128, 1997 WL 71438, at *3 (CFTC Feb. 20, 1997).

To be sure, Lachmund spoke in the context of Rule 9(b)'s particularity requirement, while here the less demanding yardstick of Rule 8(a) is involved at the current pleading stage.  But that does not help Ramsay, for even if the relationship

---

[2] It is not clear at this point whether that information may make a difference in the evaluation of Ramsay's Third-Party Complaint against Texas Trading, or whether it is proper to take such information into account in evaluating the viability of that pleading for purposes of the Rule 12(b)(6) motion advanced by Texas Trading.  Hence this opinion does not rule on that motion.  That subject, as well as such matters as the presence or absence of consideration for Texas Trading's asserted independent promise to provide Ramsay with notice, will be discussed at the November 29 status hearing.

4

between introducing broker Texas Trading and ADM were held to create some type of agent-principal relationship, the consequence of such a relationship is to bind the principal by the agent's actions taken <u>within the scope of its authority</u>. In that respect no authority is--or could be--alleged by Ramsay under which Texas Trading was somehow empowered to override the express terms of the Agreement <u>between ADM and Ramsay</u>. Nor has Ramsay advanced any assertion that could trigger any implied authority on the part of Texas Trading to reverse an express contractual provision of the Agreement--he identifies no holding-out by ADM that would create such an implication.[3]

## Conclusion

In sum, Ramsay's Counterclaim against ADM is a poster child for the proposition that "wishing does not make it so." Ramsay's Counterclaim is not viable as a matter of law, and ADM's motion to dismiss that Counterclaim is granted.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 28, 2007

---

[3] It is at the core of agency law that no declaration by an agent, as contrasted with declarations or conduct by the principal, can be bootstrapped into an undertaking that is binding on the principal.

5