IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADM INVESTOR SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 6539 |
| | ) |
| THOMAS RAMSAY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Thomas Ramsay ("Ramsay") has struck back in this action brought against him by ADM Investor Services, Inc. ("ADM") by (1) filing a counterclaim against ADM and (2) filing a Corrected Amended Third Party Complaint ("TPC") against Texas Trading Co., Inc. ("Texas Trading"), which served in the past as Ramsay's introducing broker for his trading activities--activities carried on pursuant to a written Customer Agreement between ADM and Ramsay.

According to TPC ¶¶10 and 11, even though the Customer Agreement allowed ADM to close out Ramsay's account without prior notice to him, Texas Trading later--and independently--made some oral promises that would protect him against that possibility:

> 10. Soon after December 20, 2003, and on numerous occasions thereafter, Texas Trading and Ramsay orally agreed that if at any time the cattle-futures market moved against a position taken by Ramsay, ADMIS and/or Texas Trading would provide Ramsay with a daily marin-call notice which Ramsay would be given a reasonable opportunity to satisfy by providing the specified amount of funds to texas Trading on behalf of ADMIS.
>
> 11. On various occasions, including soon after

> December 20, 2003, Texas Trading and Ramsay further
> orally agreed that as long as Ramsay met the daily
> margin-call notices, Ramsay's account would remain in
> good standing, Ramsay's positions in the cattle-futures
> market would not be liquidated, and Ramsay would be
> allowed to continue to trade, even where a greater
> deficit balance existed in Ramsay's account.

As Ramsay would have it, Texas Trading's asserted breach of those promises caused Ramsay financial harm when ADM exercised its own contractual right by closing out Ramsay's account.[1]

Texas Trading has filed a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss the TPC, and Ramsay has in turn filed a response to that motion and supporting memorandum. There is of course no mystery as to the operative standards for such motions, with all well-pleaded allegations made by the charging party being accepted as gospel. Nor does the recent tightening of the standards by the Supreme Court in Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965, 1973 n.14 (2007) call for a different perspective, because any question of the credibility of Ramsay's version--which, as stated, must be taken as true for Rule 12(b)(6) purposes--does not pose any issue of "plausibility." That is to say, the fact (if it be a fact) that Texas Trading might be unlikely to have made the asserted promises does not

---

[1] Although TPC ¶10 alleges an asserted promise by Texas Trading as to future action to be taken by ADM, this opinion does not rely on the doubtful notion that Texas Trading had authority to commit ADM to any course of action in direct conflict with its rights under the Customer Agreement. Hence the TPC will be treated for purposes of this opinion as having alleged promises by Texas Trading as to its own conduct alone.

2

render "implausible" the allegation that such promises were made.

Texas Trading's Motion ¶II.A advances the mistaken contention that the TPC relies on the premise that Texas Trading was ADM's agent in the arrangement among the three parties. Although Ramsay relies on such a notion in his Corrected Amended Counterclaim against ADM (an assertion that this Court finds extremely doubtful at a minimum), it is not at all relied upon in the TPC. And the fact that Texas Trading as introducing broker was Ramsay's agent for the purpose of executing the Customer Agreement did not preclude it from making promises to him as to how it would handle the transactions.

With that hoped-for arrow in Texas Trading's legal quiver having been broken, Texas Trading reaches in to bring out another argument: that the asserted oral promises amounted to a contract for an illegal purpose and was hence unenforceable by resort to the courts. To that end it appears to rely on Chicago Mercantile Exchange Rule 930, which sets out the right of a brokerage house such as ADM to liquidate its customer's position--the right echoed in the Customer Agreement (as to the legal effect of Rule 930, see <u>First Am. Discount Corp. v. Jacobs</u>, 324 Ill.App.3d 997, 1009, 756 N.E.2d 273, 300 (1st Dist. 2001)).[2] But Rule 930 also

---

[2] As this Court's November 28, 2007 memorandum opinion and order granting ADM's motion to dismiss Ramsay's earlier Counterclaim points out, the cited case dealt with Rule 930's predecessor Rule 827, but the two rules had "no significant difference."

3

allows the brokerage house to issue a margin call instead of instantly liquidating the customer's position, so this Court has difficulty in seeing that a comparable promise by an introducing broker is somehow illegal and void just because the brokerage house has chosen the other route of instant liquidation.

What has been said up to now calls for the rejection of Texas Trading's motion to dismiss TPC Count I, which sounds in breach of contract. But TPC Count II, which purports to state an alternative claim of fraud, does not fare so well. On that score, for nearly two decades our Court of Appeals has reiterated from time to time that the Rule 9(b) pleading requirement of "particularity" as to the "circumstances constituting fraud" calls for the equivalent of a cub reporter's directive for the lead paragraph in a newspaper story: the "who," "what," "when" and "how" (that articulation had its origin in DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).

This Court has had occasion, where the situation called for it, to depart from that locution by requiring a particularized allegation only as to the "circumstances" without demanding such chapter-and-verse allegations as to the individual fraudulent communications. But this is not such a situation: Where as here a party contends that oral face-to-face promises altered an existing written contractual arrangement, the target is entitled to the specifics so as to know just what it has to counter.

Hence Texas Trading's Rule 12(b)(6) motion is granted as to TPC Count II.

## Conclusion

Texas Trading's Rule 12(b)(6) motion is denied as to TPC Count I but is granted as to TPC Count II. Texas Trading is ordered to file its answer to Count I on or before February 15, 2008.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 25, 2008